IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACE CHRISTIAN WILLIAMS,<br><br>Defendant. | Case No. 21-CR-442-GKF |

### Motion for Upward Departure or Variance

At sentencing, this Court should depart upward eight levels to an above-guidelines term of imprisonment of 120 months because the guideline sentencing range calculated in the Presentence Investigation Report ("PIR") fails to account for Owen Looper's suffering and the extreme nature of Defendant's conduct. Alternatively, a variance above the applicable guideline range would reflect the seriousness of the offense, provide just punishment for the offense, and afford adequate deterrence.

### Relevant Facts

The court is familiar with the facts and they are accurately described in the PIR. But, in an atypical case like this one, details matter. The government therefore reminds the Court the details of: (1) what defendant said he would do, (2) what he did, and (3) how he bragged about it.

### A. *Defendant said he would do it.*

Prior to this incident, Defendant and Owen were friends and classmates at Northeast Vocational Technical Center ("VoTech") in Afton, Oklahoma. Around the first week of November 2017, Defendant became angry at Owen and began taunting him in and out of the classroom. Defendant was angry because Owen thwarted Defendant's hopes of having a "threesome" with two women.

In the days leading up to November 3, 2017, Defendant raged about Owen to classmates. Dusty Jones reported that Defendant was so upset with Owen that he said, "*I'm going to make sure Owen can't use his arms or legs for five months.*" Another classmate, James Black, testified that Defendant made similar threats about Owen.

### B. *Defendant delivered on his threats.*

On November 3, 2017, a group of VoTech students traveled to a dirt road near E. 200 Rd in Afton, Oklahoma to watch a fight between two students, Ryan Wilson and Hunter Anderson. According to multiple students, this was a common location for students to fight and settle differences.

Owen, who has never been in a fight in his life, drove to the road to watch the fight as a spectator. Upon arriving at the road, students gathered in a circle in anticipation of the fight. Owen stood alongside his classmates holding his phone and waiting for the fight to start. It was at this moment, **before any fight had started involving anyone**, that Defendant attacked Owen. Multiple witnesses, including Emily Wagner, Bryce Waybright, and Dustin Reynolds, testified that Defendant approached Owen

from behind and yelled at him to "put his phone down." Before Owen could even turn around to face Defendant, Defendant picked him up and slammed him backwards onto the ground. Once Owen was on the ground on his stomach, Defendant proceeded to punch Owen's back multiple times. Defendant then left the scene in Black's truck.

### C. *Defendant bragged about his actions.*

On the ride home, Defendant ripped his shirt off and boasted that what he had done was "fun." Defendant did not express any remorse for Owen that day or any day until trial in this case.

## Argument & Authorities

### I. Given Owen's extreme suffering, an upward departure is warranted.

The guidelines "place essentially no limit on the number of potential factors that may warrant a departure." *Koon v. United States*, 518 U.S. 81, 106 (1996). The Sentencing Commission set forth a relevant policy statement in USSG § 5K2.0(a)(2)(B), stating, "[a] departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence." USSG § 5K2.0(a)(2)(B). In most cases, "departures based on grounds not mentioned in the Guidelines will be highly infrequent." *Koon*, 518 U.S. at 95–96. However, unusual circumstances may be sufficiently extraordinary that they are accepted as a basis for departure at sentencing. *Id.* The Sentencing Commission has advised that courts look at each guideline "as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical

3

case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." U.S. Sentencing Manual ch. 1 pt. A.4(b).

The Guidelines also list encouraged factors for departure. *See* USSG §5K2.1-2.24; *see also Koon*, 518 U.S. at 94–95. The court is authorized to depart under encouraged factors if the applicable guideline does not already take them into account. *United States v. Wolfe*, 435 F.3d 1289, 1297 (10th Cir. 2006). "If the factor is … already taken into account under the Guidelines, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Id*. The district court must use its discretion "to determine whether certain factors take the case out of the 'heartland,' and make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing." *Id*.

### A. The Court should increase Defendant's sentence to a term above the guideline range to account for Owen's significant physical injuries.

Owen's significant physical injuries demand an upward departure. A court may increase a sentence above the guideline range when a "significant physical injury resulted." USSG §5K2.2. "The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked." *Id*. The Tenth Circuit upheld a seven-level departure under USSG §5K2.2 when a defendant drove drunk, collided head-on with a smaller vehicle, and left a four-year-old boy permanently and severely

disabled. *See United States v. Zunie*, 444 F.3d 1230 (10th Cir. 2006). At sentencing, the district court found that the boy had "sustained 'extreme physical injuries' necessitating multiple surgeries and hospital stays, that he '[had] been in a semi-comatose state' since the accident and '[would] never again regain consciousness,' that, in short, he '[was] not the same boy, and never [would] be, because of the accident caused by the defendant.'" *Id.* at 1237. The Tenth Circuit found that the district court's justifications "amply" supported an upward departure and that other factors, "such as the seriousness of the offense and the need for just punishment and deterrence" helped "demonstrate that the degree of departure [was] reasonable." *Id.*

Here, Defendant caused Owen permanent and life-threatening bodily injury, specifically a C6-7 fracture subluxation with locked facets and paralysis. (PIR at ¶ 13). As Owen and Dr. Brian Curtis testified in sobering detail, Owen can no longer:

- walk;
- feel or move his legs;
- move his toes;
- grip certain objects;
- cough;
- sneeze;
- get out of or into bed by himself;
- bathe himself;
- shower;

5

- dress himself;

- cook for himself;

- type on a keyboard;

- be left safely alone without a caretaker.

In short, Owen has been deprived of a normal life.

### B. An upward departure is further warranted to account for Owen's extreme mental suffering.

The Court should also depart upward for Owen' psychological injury resulting from the offense. A court may depart upward "[i]f a victim … suffered psychological injury much more serious than that normally resulting from commission of the offense." USSG §5K2.3. "Although it is true that the government bears the burden of showing that the victim suffered psychological injury greater than that which 'normally' results from the crime of conviction … there is no hard and fast rule establishing the type and quantum of evidence sufficient to meet this burden." *United States v. Begaye*, 635 F.3d 456, 463 (10th Cir.2011) (citations, brackets, and internal quotation marks omitted).

Because of this incident, Owen is serving a life sentence in a wheelchair. Owen once dreamed of owning a car repair shop. It is difficult to see how that dream could ever now become a reality. Owen now relies on his family for everyday tasks and feels like a burden to those he loves the most. Owen cannot pursue hobbies that once brought him joy, such as working on his grandma's farm or golfing. Owen will likely never be able to father children. Since he always requires a caretaker nearby, Owen

6

cannot even enjoy the simple escape of solitude. Owen must confront these realities every single day for the rest of his life. Such grave psychological misery compels an upward departure.

### C. *An upward departure is further warranted to account for Defendant's extreme conduct.*

United State Sentencing Guideline 5K2.8 provides the following grounds for departure:

> If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim…Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation.

USSG §5K2.8. The evidence in this case showed Defendant attacked Owen from behind in front of their classmates, slammed Owen headfirst to the ground (thereby paralyzing him), punched his prostrate and defenseless body multiple times, spat on him, and called him a "pussy."

Defendant's motive was narcissistic and selfish—he was angry he couldn't have a "threesome" with two women. Defendant displayed neither remorse nor even casual concern for Owen's well-being following the heinous assault. Defendant did not stick around and call 911. He didn't inquire about Owen's condition. Defendant left Owen in a ditch to fend for himself. The government asks this Court to consider what could have happened to Owen if good Samaritans like Emily Wagner had not stuck around and called 911. It is difficult to fathom how Defendant's wanton cruelty does not constitute the very sort of behavior that USSG §5K2.8 seeks to punish and deter. An upward departure is appropriate.

## II. Alternatively, an upward variance is appropriate.

Alternatively, an upward variance is warranted under the § 3553(a) factors. When determining an appropriate sentence to be imposed, the Court must consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established . . .
> (5) any pertinent policy statement . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In the event Defendant's conduct and Owen's extreme suffering do not persuade this Court to depart upward under the pertinent policy statements, applying the additional factors in § 3553(a) shows why Defendant should nonetheless receive a sentence above the guidelines. For the reasons already discussed herein (and incorporated in this request for a variance), an upward variance would reflect the seriousness of the offense, provide just punishment for the offense, and afford adequate deterrence. With respect to deterrence, it is worth noting that Defendant has a prior

8

conviction for knowingly concealing property. (PSR at ¶ 22). The three-year deferred sentence he received for that conviction evidently did not deter him from future criminality. The Court should not afford Defendant further leniency here.

## Conclusion

An upward departure from the calculated guideline range to an above-guidelines term of imprisonment of 120 months is warranted because an imprisonment term between 41-51 months fails to sufficiently account for Owen's grave suffering and the extreme nature of Defendant's conduct. Alternatively, an upward variance would reflect the seriousness of the offense, provide just punishment for the offense, and afford adequate deterrence.

Respectfully submitted,
CLINTON J. JOHNSON
Acting United States Attorney

*/s/ Richard M. Cella*
Richard M. Cella, TX Bar No. 24078328
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

**Certificate of Service**

I hereby certify that on the 9th day of June, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF recipient:

John Dunn
*Counsel for Defendant*

                                           */s/ Richard M. Cella*
                                           Richard M. Cella
                                           Assistant United States Attorney