IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 21-CR-442-GKF |
| JACE CHRISTIAN WILLIAMS, | ) ) ) |
| Defendant. | ) |

### DEFENDANT JACE WILLIAMS' SENTENCING MEMORANDUM

**COMES NOW** Defendant Jace Williams, by and through his attorney of record, John M. Dunn, and respectfully offers this Sentencing Memorandum to the Court for consideration when imposing sentence in the above-styled matter. In support of which, the Defendant shows the Court as follows:

### I. INDICTMENT

Mr. Williams was indicted on October 5, 2021 in a two-count indictment charging Count One: Maiming and Count Two: Assault Resulting in Serious Bodily Injury. This case is a *McGirt* case that was originally filed in Mayes County District Court, but was dismissed because the Defendant is a member of the Miami Indian Tribe and the crime occurred in Indian Country.

### II. PLEA AND COOPERATION

Mr. Williams maintained his plea of "not guilty" to both counts until the day the jury was to be instructed. Prior to Court being called back into session, the Government requested a significant change to the jury instruction giving the definition of "assault". As a result of that change, the Defendant had no hope of an acquittal since he had previously testified that he did take actions that would have made him guilty under the definition that was to be given to the jury.

### III.  SENTENCING FACTORS

When crafting the appropriate sentence, it is incumbent upon the Court to consider the sentencing factors identified at 18 U.S.C. § 3553.

A. <u>18 U.S.C. § 3553(a)(1) - the nature and circumstances of the offense, and the history and characteristics of the Defendant</u>

Jace Williams is an All-American boy. He was born in Joplin Missouri on October 19, 1998. He is a member of the Miami tribe of Indians. Mr. Williams attended Afton high school, where he graduated in 2019. As a part of his high school education, Mr. Williams attended vocational training at Northeast Vocational Technology Center studying diesel and auto mechanics. However, because of the events that give rise to this criminal case, he was unable to complete that program.  While in high school, he was employed part-time Brahms earning minimum wage. Throughout his teenage years he mowed lawns in his neighborhood in an effort to earn extra money. After he left Brahms, he went to work at Montana Mike's steakhouse in Miami Oklahoma. Once he turned 18, he was employed at Murphy's gas station for several months making approximately $10 an hour. After he turned 18, he spent his summers working at various concrete jobs. Ultimately, Mr. Williams went to work for the Miami tribe assisting elderly individuals with meals and various necessities.

Mr. Williams has a limited criminal history that consists of a 3-year deferred sentence for Knowingly concealing stolen property.  The information provided indicates that he was the passenger in a pickup that was stopped by police for failure to signal.  There was a boat and boat motor found in the bed of the pickup that was apparently determined to be stolen.

In 2017, Northeast Vocational Technology Center in Afton, Oklahoma. Mr. Williams and Mr. Looper were fast friends. In fact, it could be said that they were each other's best friends. However, by October 2017, that relationship was tested by a girl.

After staying up all night texting each other and sharing their troubles about Jace's girlfriend, things change. In the morning of November 2, 2017 Mr. Looper texted Mr. Williams and was met with a hostile response. Apparently, Shay Cornog, Mr. Williams' girlfriend had told him that there was a rumor circulating that he was going to have a threesome with her and another girl. She told Mr. Williams that Mr. Looper had told her. This caused trouble in their relationship and Mr. Williams was angry at Mr. Looper. Throughout the next couple of days, the once best friends exchanged hostile words and text messages with each other. Mr. Looper went to the diesel instructor and the boys were ultimately referred to the Administrator of the Vo-Tec.

The evidence presented was that the boys were told that there was no fighting on campus and that a fight on campus would result in their expulsion. Through a series of text messages, it appears that Mr. Williams challenged Mr. Looper to a fight and Mr. Looper accepted. Words continued to be exchanged between the two - but that is all they were...words. Nothing different than what boys say to each other prior to engaging in a fight. Merely lip service.

Prior to leaving to the designated place, Mr. Williams again confronted Mr. Looper and told him that if he went to the fight, he was going to get hurt. Nonetheless, the boys proceeded to the scene of the fight with Mr. Looper in the lead. Once there, Mr. Williams saw Mr. Looper and told him to put his hone down three times. He then attacked Mr. Looper, grabbing him around the torso and throwing him into a ditch. He then jumped on Mr. Looper and hit him three more times and called him a "pussy" and left the fight, leaving Mr. Looper laying in the ditch.

Mr. Williams had no idea that Mr. Looper had suffered a broken neck or paralysis. He had never intended - or even believed - such a result was possible. However, the fact remains

that Mr. Looper was terribly injured in the fight. As a result of those injuries, he is confined to a wheelchair and has limited use of his arms and hands.

B. <u>18 U.S.C. § 3553(2) - the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense: (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the Defendant: and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

    (a) *The seriousness of the offense, the need to promote respect for the law, and to provide just punishment for the offense.*

This particular offense, while considered a felony, is not a serious crime. It was two school boys fighting. There was no evidence presented - that the particular outcome of this fight was planned any further than the fact that there was a fight. Even if (for the sake of argument), the events occurred in a manner that leant themselves to an attack of Mr. Looper by Mr. Williams - it was still just a fight between boys. This was not a single act that was planned and intended from the beginning to break Mr. Looper's back. The only evidence to the contrary is the "trash talk" that occurred between the two prior to the fight. Trash talk that not a single witness believed was anything more than that.

This is not to say what happened to Mr. Looper was not tragic. From some accounts, it was also a part of his own making. Regardless, the actions of Mr. Williams picking Mr. Looper up and throwing him in such a manner as to cause him to land on his head was at a minimum reckless and the fight was certainly deliberate.

    (b) *The need to afford adequate deterrence to criminal conduct.*

In any penal system, the taking away of the liberty of a defendant is the second greatest penalty to be imposed, second only to the death penalty. Time is the one thing that each of us possesses that can never be recovered. When we prescribe a term of years as punishment, we are

4

essentially requiring the individual to forfeit a percentage of their life. Regardless of the type of sentence, the threat of incarceration is by definition deterrence to others that might consider this kind of criminal activity.

As long as there have been schoolyards, there have been schoolyard fights. Generally, this one is no different - only the results make these events distinguishable from the other fights which occur with both frequency and regularity. So, the question is asked, how much punishment is necessary to deter *this kind* of criminal conduct, where the participants are mere boys and the events occurred at school. If deterring conduct were the ultimate goal, the Court would consider some kind of community service where Mr. Williams would travel from school to school educating teenagers as to the hazards of unforseen consequences that can occur when people get into fights.

(c)     *The need to protect the public from further crimes of the defendant.*

As was discussed above, these crimes are the product of a school yard fight, not a major conspiracy or the logical continuation of a life of crime. Because of the nature of this crime, it is not likely to be repeated. Therefore, there is not a need to protect the public from future crimes of *this defendant*.

In further support of this statement, Counsel would advise the Court that since his incarceration, Mr. Williams reports that he has spent his time helping new inmates adjust to incarceration. He has further interceded to prevent inmates from fighting - warning them of the potential unforseen consequences of their actions.

(d)     *The need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

Mr. Williams is still a young man who will be emerging from prison at the end of his sentence. He has only a high school diploma. Mr. Williams has indicated an interest in pursuing

5

both vocational training and a college education. It is his belief that he will likely need to have some training in how to run a business, as many of his vocational interests lend themselves to self employment.

C. <u>18 U.S.C. § 3553(a)(3) - the kinds of sentences available pursuant to 18 U.S.C. § 3553(a)(4)(A) - the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines</u>.

Based upon the calculations conducted by Probation, the sentencing guidelines place the Mr. Williams in Zone D, making him ineligible for probation. However, because this crime is a Class C felony, the defendant is eligible for probation so long as he is also assessed a fine, restitution, or community service. In this case, it is expected that there will be some amount of restitution that is owed.

D. <u>18 U.S.C. § 3553 (a) (5) - any pertinent policy statement</u>

Counsel is aware of no policy statement that would affect sentencing.

E. <u>18 U.S.C. § 3553(a)(6) - the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct</u>.

Counsel is not aware of any federal cases that could be reviewed.

F. <u>18 U.S.C. § 3553(a)(7) - the need to provide restitution to any victims of the offense.</u>

The victim of this case is entitled to restitution. That amount is disputed. Thus far, there has been no documentation of the amount of restitution nor to whom the restitution would be owed, i.e. insurance companies. The fact that there is restitution owed (and it is expected to be significant) could form a basis for the Court sentencing Mr. Williams to a term of probation.

## V.  CONCLUSION

Before the Court is a 23-year-old man who was 19 years old at the time of the incident. He is being sentenced following a plea of guilty to Count II - Assault Resulting in Serious Bodily Injury in Indian Country and being found guilty following a jury trial of Count I - Maiming in Indian Country.  These charges arise out of events that can be described as a school yard fight. Despite the commonplace nature of events, they left Mr. Looper paralyzed.  Mr. Williams has a limited criminal history consisting of knowingly concealing stolen property.  Mr. Williams is requesting a sentence that is as lenient as the Court can impose, including the consideration of probation, based upon the nature and circumstances of this crime.  If the Court chooses to impose a sentence involving incarceration, Mr. Williams would benefit from receiving education in both the vocational and collegiate arena.

Respectfully Submitted,

/s/ John M. Dunn
John M. Dunn, OBA No. 20975
The Law Offices of John M. Dunn, PLLC
616 South Main Street, Suite 206
Tulsa, OK  74119
Telephone: (918) 526-8000
Facsimile: (918) 359-5050
Email: jmdunn@johndunnlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of June, 2022, a true and correct copy of the above and foregoing instrument was electronically transmitted to AUSA Richard Cella via ECF.

/s/ John M. Dunn
John M. Dunn